UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

REFRESCO BEVERAGES US INC.,
REFRESCO BEVERAGES LLC,

        Plaintiffs,

      v.

SYMRISE INC.,

        Defendant.

Civil Action No.: _____

**VERIFIED COMPLAINT IN SUPPORT OF PLAINTIFF'S
APPLICATION FOR TEMPORARY RESTRAINING ORDER
<u>AND PRELIMINARY INJUNCTIVE RELIEF</u>**

      Plaintiffs Refresco Beverages US Inc. ("Refresco" or the "Company"[1]) and Refresco Beverages LLC (collectively, "Plaintiffs") through their undersigned counsel, FordHarrison LLP, by way of their Verified Complaint against defendant Symrise Inc. ("Symrise"), alleges and says:

**<u>INTRODUCTION</u>**

      1.     This case arises from a ***carefully planned and executed theft of trade secrets and unlawful raid on a competitor*** by Symrise. Refresco is a company that engages in producing, manufacturing, packaging, and distributing retailer brand beverages in the United States. Symrise is a direct competitor. In the months preceding Refresco's purchase of Refresco Beverages LLC f/k/a Cott Beverages LLC, Symrise conspired with former Refresco Beverages Vice President of Technical Services & Operations Tyrone Polhamus ("Polhamus") and former Refresco Beverages President Edmund O'Keefe ("O'Keefe") (***while they were still employed by the Company***) to secretly create a new beverage (***using Refresco's trade secrets, resources, and***

---

[1] For the purposes of this Complaint, the "Company" shall refer collectively to Refresco, Cott Beverages Inc., and Cott Beverages LLC.

*employees*) for Symrise's client, "Client A"[2], and to establish a "NewCo" to directly compete with Refresco.  In furtherance of this plan, Symrise, Polhamus, and O'Keefe orchestrated the hire away (or "Lift Out") of 75% of the Company's Senior Leadership for Research and Development to go work for the "NewCo" which became Califormulations LLC, a company in which Symrise is significantly invested. See https://www.bevnet.com/news/supplier-news/2019/symrise-announces-califormulations-llc-beverage-innovation-platform/.

2.      Compounding this impropriety, Symrise, with the assistance of several of Refresco's defector employees, misused, exploited, and misappropriated the Company's trade secret and confidential information to perform top-secret work on behalf of Symrise (upon information and belief - ***unbeknownst to Symrise's client, Client A***) and perpetuate the Lift Out. For several months, Symrise and Polhamus, along with several defector employees of the Company, covertly worked together to misappropriate the Company's trade secrets and confidential information and create a "NewCo" aka Califormulations to employ Refresco's former employees and directly compete with Refresco in Columbus, Georgia. Aware that Refresco's employees owed Refresco a duty of loyalty and were subject to employment agreements containing certain restrictive covenants, without privilege, Symrise intentionally induced, by improper means, these employees to conspire with them to set up the "NewCo" aka Califormulations.

3.      Through these and other actions, Symrise has engaged in unfair competition, misappropriated Refresco's trade secrets and confidential information, and tortiously interfered with Refresco's agreements and relationships, and the Company seeks redress against Symrise for the harm it has suffered and to safeguard its continuing legal rights.

---

[2] At this time the name of this client is being withheld.

## THE PARTIES, JURISDICTION, AND VENUE

4.      Symrise is a New Jersey corporation with its principal place of business located at 300 North Street, Teterboro, New Jersey 07608.

5.      Refresco is a Georgia corporation with its principal place of business located at 8112 Woodland Center Boulevard, Tampa, Florida 33614.

6.      Refresco Beverages LLC is a corporation organized under the laws of the State of Delaware with its headquarters at 1001 10th Avenue, Columbus Georgia 31901.  Refresco Beverages LLC is registered to do business in Georgia, maintains an office in Georgia, and does business throughout the United States.  Refresco Beverages LLC has two members: (1) Brad Goist, President, COO, Manager, who resides in Tampa, Florida; and; (2) Bill McFarland, VP and CFO, who resides in St. Petersburg, Florida.

7.      This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) because the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs and diversity of citizenship exists between the parties.

8.      Venue is proper because the resulting injuries were caused by Symrise in this District and Symrise conducts business within this District.

## FACTUAL BACKGROUND AS TO ALL COUNTS

9.      Refresco is a company that engages in formulating, producing, manufacturing, packaging, and distributing beverages and concentrates in the United States.  Refresco's product line includes concentrates, alcoholic beverages, carbonated soft drinks, sparkling flavored beverages, juices and juice-based products, flavored sparkling water, energy beverages, thirst quenchers, iced teas, as well as other beverage products. It serves brand owners, grocery, mass-merchandise, drugstore, and convenience store chains, as well as wholesalers. Refresco has

bottling facilities throughout the United States, as well as a product development, research, and concentrate manufacturing facility under its subsidiary, Refresco Beverages LLC in Columbus, Georgia.

10.    Refresco Beverages US Inc. delivers to its customers an end-to-end solution or a menu of services from developing new tastes and flavors, formulation, product development and manufacturing for delivery to retail locations. Refresco's production platform provides customers with close proximity and reliable service across geographies. Refresco Beverages LLC develops and formulates new beverages and manufactures concentrates for its customers.

11.    On January 30, 2018, Refresco Group NV acquired the shares of Cott Beverages Inc. ("Cott") from Cott Corporation in a share purchase agreement, and on March 5, 2018, renamed Cott Beverages Inc. to Refresco Beverages US Inc. ("Refresco").

12.    On February 8, 2019, Refresco acquired Cott Beverages LLC, a Delaware limited liability company from Cott Holdings Inc. through a share purchase agreement. On February 26, 2019, Refresco renamed Cott Beverages LLC to Refresco Beverages LLC.

13.    Refresco Beverages LLC is a subsidiary of Refresco Beverages US Inc. Refresco Beverages LLC has a product development, research, and a concentrate manufacturing facility in Columbus, Georgia.

14.    Symrise develops, produces, and supplies fragrances, flavorings, cosmetic active ingredients, raw materials, and functional ingredients. Symrise works with its clients to develop new ideas and market-ready concepts for several products including beverages, snacks, and confectionery.

15.    Califormulations LLC ("Califormulations") Califormulations is a company that engages in the business of beverages, including formulation development, labelling, stability testing, consumer insights, scale-up, ingredient sourcing and co-packing and, thus,

4

Califormulations is a direct competitor of Refresco. *See*

https://www.youtube.com/watch?v=Npg9etcaQ8g&feature=share.

16.     On May 8, 2019, Symrise announced Symrise's investment in and the creation of

a strategic partnership with Califormulations. *See* https://www.bevnet.com/news/supplier-

news/2019/symrise-announces-califormulations-llc-beverage-innovation-platform/ .

**A.     Agreements of Polhamus, Ly, Pontes, Klaybor, Jackson, Gee, and O'Keefe**

17.     In consideration for his employment, effective July 16, 2013, Polhamus entered

into a Confidentiality Undertaking and Restrictive Covenants Agreement ("Polhamus's

Agreement") with Cott, a copy of which is attached hereto as **Exhibit A**, and for the additional

consideration of $154,499.98, Polhamus also reaffirmed his non-disclosure of confidential

information and trade secrets obligations.

18.     In consideration for his employment, effective April 4, 2003, Khanh Ly ("Ly")

entered into a Confidentiality Undertaking and Restrictive Covenants Agreement ("Ly's

Agreement") with Cott, a copy of which is attached hereto as **Exhibit B**.

19.     In consideration for his employment, effective March 12, 2004, Jason Pontes

("Pontes") entered into a Confidentiality Undertaking and Restrictive Covenants Agreement

("Pontes's Agreement") with Cott, a copy of which is attached hereto as **Exhibit C**.

20.     In consideration for her employment, effective October 28, 2013, Dana Klaybor

("Klaybor") entered into a Confidentiality Undertaking and Restrictive Covenants Agreement

("Klaybor's Agreement") with Cott, a copy of which is attached hereto as **Exhibit D**.

21.     In consideration for her employment, effective June 22, 2018, Wanda Jackson

("Jackson") entered into a Confidentiality Undertaking and Restrictive Covenants Agreement

("Jackson's Agreement") with Cott, a copy of which is attached hereto as **Exhibit E**.

22.    In consideration for her employment, effective October 29, 2013, Kaleena Gee ("Gee") entered into a Confidentiality Undertaking and Restrictive Covenants Agreement ("Gee's Agreement") with Cott, a copy of which is attached hereto as **Exhibit F**.

23.    In consideration for **$598,180.00** dollars, O'Keefe entered into a Separation Agreement with Refresco Beverages US, Refresco Beverages Canada Inc., Cott Beverages Inc., and Cott Beverages LLC ("O'Keefe's Agreement").

24.    O'Keefe, Polhamus, Ly, Pontes, Klaybor, Jackson, and Gee were privy to Refresco's most confidential information.  That information included, but is not limited to Refresco's trade secrets, formulae (specifically including, but not limited to cola formulae), laboratory processes and procedures, know-how, competitive advantage, manufacturing costs, marketing plans and techniques, cost and pricing figures, customer lists, supplier lists, software, and information relating to Refresco's employees, suppliers, customers, and persons in contractual relationships with Refresco.

25.    All of the Company's confidential information and trade secrets are not known outside the Company; created by the Company over many years of trial-and-error; developed by the Company for internal use only; and are inherently and intrinsically valuable.

26.    All of the Company's confidential information and trade secrets are related to multiple products or services used in, or intended for use in, interstate commerce.

27.    All of the Company's confidential information and trade secrets allow the Company to perform their services more efficiently and with quality and precision greater than its competitors – exactly what sets the Company apart from the pack.

28.    The misuse or exploitation of this information by competitors allows them an unfair advantage over the Company, and allows such competitors to divert and convert the

6

Company's customers and revenues, causing irreparable injury to the Company's customer relations.

29.     In January 2018, as a result of the closing of Cott Corporation's sale of its traditional carbonated soft drink and juice business to affiliates of Refresco Group, N.V., the employment relationships of Polhamus, O'Keefe, Ly, Pontes, Klaybor, Jackson, and Gee with Cott was transferred to Cott Beverages LLC. As part of this transfer, all restrictive covenants running in favor of Cott, including all confidentiality, non-competition, non-solicitation and assignment of inventions, were assigned to Cott Beverages LLC. Copies of acknowledgments of this transfer are attached hereto as **Exhibit G**.

30.     After Refresco acquired Cott Beverages LLC on February 8, 2019, the employees of Refresco Beverages LLC, including Polhamus, O'Keefe, Ly, Pontes, Klaybor, Jackson, and Gee were transferred to Cott Beverages LLC. On February 26, 2019, Cott Beverages LLC was renamed Refresco Beverages LLC.

31.     Additionally, some of the Agreements contain an assignment provision, allowing Cott to assign the Agreement to any legal entity that becomes a "succession in interest (by purchase of assets or by merger or otherwise)". *See* Exhibit A, ¶ 6(e).

**B.     Polhamus's Employment with the Company**

32.     In or around July 2001, Cott Beverages USA, hired Polhamus to work as a Director of Manufacturing/Plant Manager in Columbus, Georgia.  In or around July 2013, Polhamus was promoted to Vice President of Technical Services & Operations.

33.     In his position, Polhamus necessarily had access to and used confidential information such as the Company's trade secrets, formulae (specifically including, but not limited to cola formulae), know-how, marketing plans and techniques, cost and pricing figures, customer lists, supplier lists, software, and information relating to the Company's employees,

suppliers, customers, and persons in contractual relationships with the Company. Importantly, in his position Polhamus was provided access to confidential and proprietary formulae belonging to the Company's customers and the Company itself. Only three other individuals had access to this confidential and proprietary information. Through his employment with the Company, Polhamus developed significant relationships with the Company's customers, often being the "face" of the Company with the customers, and gained a high level of influence and credibility with Cott's customers and vendors.

34.     As Vice President of Technical Services & Operations, Polhamus was responsible for managing the Technical Services and Operations of Cott's Columbus facility. As Vice President of Technical Services & Operations, Polhamus regularly managed a team of more than 100 employees; and had the authority to hire and fire employees. Additionally, as Vice President of President of Technical Services & Operations, Polhamus was intimately involved in the planning for Cott's Technical Services and Operations.

35.     On February 11, 2019, Refresco terminated Polhamus's employment and provided him with significant consideration under a separation agreement. In that agreement, Polhamus acknowledged and agreed to his ongoing obligations, including, but not limited to, under the Company's Code of Conduct as well as "with regard to the confidentiality and trade secrets and confidential and proprietary information which [Polhamus] may have received during the course of [his] employment with the Company."

C.     **O'Keefe's Employment with the Company**

36.     O'Keefe has worked for the Company on and off since 1994. In or around May 2009, Cott Corporation hired O'Keefe for the position of Vice President of Business Development RCI and Strategy. In this position, O'Keefe reported to Jerry Fowden, President and CEO of the Cott Corporation. At some point, O'Keefe's title was changed to the role of

8

General Manager, RC Cola International ("RCCI"). In this role, O'Keefe was responsible for managing and supervising all RCCI Employees. Sometime in 2018, O'Keefe gained the title of President of Cott Beverages LLC and responsibility for managing and supervising all RCCI and all Cott Beverages LLC employees.

37.     In his position, O'Keefe necessarily had access to and used confidential information such as the Company's trade secrets, know-how, marketing plans and techniques, cost and pricing figures, customer lists, supplier lists, software, and information relating to the Company's employees, suppliers, customers, and persons in contractual relationships with the Company. Through his employment with the Company, O'Keefe developed significant relationships with the Company's customers and gained a high level of influence and credibility with the Company's customers and vendors.

38.     On February 8, 2019, Refresco terminated O'Keefe's employment and provided him with significant consideration under a separation agreement. In that agreement, O'Keefe acknowledged and agreed to his ongoing obligations, including, but not limited to confidentiality of the Company's confidential information and trade secrets.

     **D.     Ly's Employment with the Company**

39.     In or around April 2003, Cott Beverages Inc. hired Ly to work as a Research and Development Scientist at its Columbus, Georgia facility.

40.     During his employment with the Company, Ly became the Company's top research and development scientist for the Company's North American business unit. In his position, Ly gained a deep knowledge of the Company's manufacturing infrastructure. Through his employment with the Company, Ly also developed significant relationships with the Company's customers and suppliers. In his position, Ly necessarily had access to, developed, and used confidential information such as the Company's trade secrets, formulae (specifically

9

including, but not limited to beverage formulae), laboratory processes and procedures, know-how, customer lists, supplier lists, software, and information relating to the Company's employees, suppliers, customers, and persons in contractual relationships with the Company.

41.     In April 2019, Ly resigned from his employment with Refresco. Ly informed at least one employee at the Company that he was leaving the Company to go work for Symrise and help launch a concentrate facility like the Company's in Columbus, Georgia. Ly also mentioned he was receiving an equity share in exchange for investing in the company.

42.     Upon information and belief, Ly left Refresco to go work for Califormulations and/or Symrise and plans to use his knowledge and contact base to compete with the Company.

**E.     Pontes's Employment with the Company**

43.     In or around March 2004, Cott Beverages Inc. hired Pontes to work as a Plant Manager at its Columbus, Georgia facility.

44.     As a Plant Manager, Pontes was responsible for plant management, concentrate supply, and procurement activities of ingredients for the facilities. Through his employment with the Company, Pontes developed an expertise in procuring the necessary ingredients and materials required for beverage development and production. Through his employment with the Company, Pontes also developed significant relationships with the Company's suppliers. In his position, Pontes necessarily had access to and used confidential information such as the Company's trade secrets, mixing instructions, know-how, supplier lists, software, and information relating to the Company's employees, suppliers, customers, and persons in contractual relationships with the Company.

45.     On April 29, 2019, Pontes resigned from his employment with Refresco.  Upon information and belief, Pontes left Refresco to work for Califormulations and/or Symrise and

plans to use his knowledge and contact base to compete with the Company. Pontes's last day of employment with Refresco was April 30, 2019.

**F.      Klaybor's Employment with the Company**

46.      In or around July 2011, Cott Beverage Inc. hired Klaybor in the position of Senior Laboratory Technician at its Columbus, Georgia facility. Klaybor was later promoted to several positions within the Company, including Associate Scientist in 2013, Manager of Formula Management in 2016, and Director of Lab Services in 2017.

47.      In her positions as Manager of Formula Management and Director of Lab Services, Klaybor was responsible for carrying out ingredient evaluations driven by supply issues and/or cost reduction, providing plant quality support and product development support, and formula management, which includes optimizing formulas to run efficiently in a plant setting and rationalizing existing formulas to improve plant efficiency. Klaybor is the Company's only paid value engineering expert. As Manager of Formula Management, Klaybor was responsible for managing the Formula Division of the Research and Development department of Refresco. As Manager of Formula Management, Klaybor regularly managed a team of six (6) employees; and had the authority to hire and fire employees. Additionally, as Manager of Formula Management, Klaybor is intimately involved in the planning for Refresco's Research and Development Department.

48.      Through her employment with the Company, Klaybor has developed significant expertise in optimizing beverage formulas in a plant setting, thereby cutting substantial costs for the Company. Through her employment with the Company, Klaybor has also developed in expertise in copack implementations of all launches of the Company's copack customers in the Company's plants. In her position, Klaybor necessarily has access to and used confidential information including the Company's trade secrets, formulae (specifically including, but not

11

limited to customer beverage formulae), laboratory processes and procedures, know-how, cost and pricing figures, customer lists, supplier lists, software, and information relating to the Company's employees, suppliers, customers, and persons in contractual relationships with the Company.

49.     In April 2019, Klaybor informed Refresco that she was putting in her "two weeks' notice" and was resigning from her employment with Refresco. Klaybor has informed at least one employee at Refresco that she had accepted a job with Califormulations.

**G.     Jackson's Employment with the Company**

50.     In or around June 2018, Cott Beverages Inc. promoted Jackson to work as a Material Planner at its Columbus, Georgia facility.

51.     In her position as Material Planner, Jackson was responsible for working with the Company's suppliers to have sufficient inventory of raw materials at the Company's Columbus facility in time to meet production requirements. In her position, Jackson necessarily had access to and used confidential information such as the Company's trade secrets, know-how, cost and pricing figures, customer lists, supplier lists, software, and information relating to the Company's employees, suppliers, customers, and persons in contractual relationships with the Company.

52.     On April 30, 2019, Jackson informed Refresco that she was putting in her "two weeks' notice" and was resigning from her employment with Refresco.  Upon information and belief, Jackson left Refresco to work for Califormulations and/or Symrise.

**H.     Gee's Employment with the Company**

53.     In or around May 2005, Cott Beverages Inc. hired Gee to work as a Flavor Development Expert at its Columbus, Georgia facility.  Gee was later promoted to the position of Beverage Scientist in 2017.

54. In her positions with the Company, Gee was responsible for overseeing flavor selection, evaluation, and beverage application development. Gee often used laboratory equipment and conducted testing on ingredients, concentrates, syrups, and beverages. Through her employment with the Company, Gee developed an expertise in flavor development and formulation, specializing in juices and flavor innovation concepts. In her position, Gee necessarily had access to and used confidential information such as the Company's trade secrets, formulae, laboratory processes and procedures, know-how, techniques, cost and pricing figures, customer lists, supplier lists, software, and information relating to the Company's employees, suppliers, customers, and persons in contractual relationships with the Company.

55. Through her employment with the Company, Gee has obtained specialized skills in flavor innovation.

56. In April 2019, Gee resigned from her employment with Refresco. Gee informed at least one employee at the Company that she was going to work for Symrise and would report to Mr. Michael Falkenberg, Symrise's Senior Director of Beverages and Savory.

57. Upon information and belief, Gee left Refresco to go work for Califormulations and/or Symrise, and plans to use her knowledge and contact base to compete with the Company.

**I.     Formation of Califormulations**

58. On or about March 20, 2019, Califormulations became incorporated in Delaware.

59. On or about April 2, 2019, Califormulations filed an application to conduct business in Georgia.

60. Polhamus is listed as the Manager of Califormulations in that application.

61. Upon information and belief, O'Keefe and Ly are investors in Califormulations and are performing work and/or providing services on behalf of Califormulations.

13

**J.     Symrise's Illegal Conduct**

62.     On October 24, 2018, Falkenberg emailed Polhamus and asked for his assistance

in producing a product for one of Symrise's customers. In this email, Falkenberg states:

> We currently have 3 different customers who seem to be interested in the above type of product. All of them are facing the same challenge: They are not capable of bringing this type of project to life with small volume runs to start with. Here's where we would like to help in partnership with you.
>
> To get this started we'd be happy to co-invest if needed. If this is something you think would work we would appreciate a cost-estimate for any part you feel comfortable taking over.
>
> **On another note, we would like to start a more general discussion about joint opportunities for projects such as the above and the management / go to market thereof.** Fueled by the work with our own incubator "Califormulations" we see the demand in the development, activation and go-to-market space even by our global customers. We are certainly strong on the formulation and development side, but would be looking for help on the scale-up, bottling, market network and project management side.

(emphasis added).

63.     Polhamus forwarded this email to Ly, telling him he wanted to discuss this with

him. Ly responded, copying Pontes to the email, telling Polhamus he was available to discuss.

64.     On December 14, 2018, Falkenberg sent Polhamus and O'Keefe an email stating:

> **We're glad to hear that our vision about NewCo matches** and also that you're willing to support us on a short notice with the [Customer A] project. As discussed we share the below with you under the framework of our NDA. We have not yet disclosed to [Customer A] that we intend to work together with you on this project. Please do not disclose any of this to any other party. Thanks!
>
> Please find attached [Customer A]'s timeline and concept descriptions. I hope this helps you to familiarize yourselves with the briefing.
>
> (See attached file: Road Runner Timeline 12.13.pdf)(See attached file: Road Runner, 3 Concept Spaces 12.11.18.pdf)(See attached file: PRR_Project_Update_12-04-18_v3.pdf)(See attached file: Energy_Deep_Dive_Alive_Panel_Report.pdf)(See attached file: Design Cycle I Pre_Read Exploratory Research Summary 11.20.2018.pdf)

**We will get back to you shortly with next steps for this project and look forward to receiving your suggestions for a date for a meeting to define next steps for NewCo**.

(emphasis added).

65.     Polhamus forwarded this email to Ly, stating "Let's discuss." Ly responded stating "Happy to discuss. Let me know when you're available."

66.     In January 2019, Ly asked Michelle McGuire, an employee of the Company, to assist him with a project known to Ly as "Road Runner." Ly did not inform McGuire's supervisor or the Lab Manager that he had McGuire working on this project with him. Ly **instructed** McGuire **not** to discuss project Road Runner with anyone. Gee later worked on project Road Runner with Ly.

67.     Project Road Runner was a project Ly worked on for Symrise. Ly used the Company's employees, computer systems, lab, and lab equipment to formulate a green tea beverage for a Symrise Customer on behalf of Symrise.

68.     Gee used the Company's computer systems, lab, and lab equipment to work on project Road Runner.

69.     On January 30, 2019, Ly sent Donna Parker, Symrise Sr. Product Development Manager, Beverage Applications, an email, copying Gee, stating:

> Please find attached the formulations for the items that shipped today for evaluation along with the supplier information. For bulk materials we have multiple suppliers qualified, whereas the unique ingredients are still work in process for qualification of suppliers and product evaluations.

Attached to this email were several formulations created by the Company's employees on behalf of other than Plaintiffs.

70.     Without permission or authority, Ly, Gee, Polhamus, and O'Keefe disclosed to Symrise the Company's confidential and trade secret information, including formulas developed by the Company's employees which, belong to the Company.

71.     The Company was not compensated for the secret work the Company's employees performed surreptitiously for Symrise or for the formulas sent by its employees to Symrise, which were created by the Company's employees using the Company's proprietary information and equipment.

72.     Instead of providing the Company with the opportunity to work with Symrise on a joint venture corporate opportunity, Polhamus, O'Keefe, Ly, Pontes, and Gee took the opportunity for them themselves and concocted a plan to work on the joint venture through creation of a new, competing company.

73.     Upon information and belief, in or around 2019, O'Keefe -- both before and after his employment with the Company ended -- on behalf of Califormulations and Symrise, began, directly or indirectly, soliciting current employees of Refresco to work for Califormulations and Symrise, in violation of his duty of loyalty to the Company.

74.     Upon information and belief, in or around 2019, Polhamus -- both before and after his employment with the Company ended -- on behalf of Califormulations and Symrise, began, directly or indirectly, soliciting current employees of Refresco to work for Califormulations and Symrise, in violation of his duty of loyalty to and agreement with the Company.

75.     The resignations of Ly, Pontes, Jackson, Klaybor, and Gee, without warning or notice, came as a complete shock to the Company.

76.     On or around April 29, 2019, Sam Khoury, an employee of the Company, reported that several employees resigned from the Company to work at Califormulations and Symrise.

77.     Upon information and belief, Polhamus and O'Keefe have solicited at least five Refresco employees and continue to unlawfully solicit Refresco's existing employees.

16

78.     As of May 2, 2019, Symrise has caused **seventy-five percent** (75%) of the Company's Senior Leadership for Research and Development for the Company's North America Business Unit to quit their employment with the Company within the last thirty days.

79.     Upon information and belief, within the last thirty days, **seventy-five percent** (75%) of the Company's Senior Leadership for Research and Development for the Company's North America Business Unit have resigned from their employment to go work for Califormulations or Symrise.

80.     Upon information and belief, Symrise is unlawfully competing with the Company and indirectly attempting to target Refresco's customers through a new marketing campaign.

81.     Upon information and belief, Polhamus, O'Keefe, Ly, Pontes, Klaybor, Gee, and Jackson are using the confidential information they had obtained during their employment with the Company to benefit the operation of Califormulations and Symrise.

82.     Upon information and belief, Polhamus, O'Keefe, Ly, Pontes, Klaybor, Gee, and Jackson, are soliciting, and/or attempting to solicit business from the Company's customers with whom they had material contact with during their employment with Refresco.

83.     Upon information and belief, Polhamus, Ly, Pontes, Klaybor, Gee, and Jackson, on behalf of Califormulations and Symrise, have solicited and continue to unlawfully solicit, directly or indirectly, the Company's existing and former employees in violation of their Agreements with the Company.

84.     Symrise's actions have resulted in significant, irreparable harm to Plaintiffs.

**K.      An Injunction is Warranted Because Symrise and Califormulations are Direct Competitors of the Company**

85.     Refresco and Symrise compete head-to-head in the beverage industry.

86.     Similarly, Califormulations and Refresco compete head-to-head in the beverage industry.

17

L.      **An Injunction is Warranted Because Refresco will be Irreparably Harmed if Symrise is Permitted to Hire Away Refresco's Employees, Further Use Refresco's Trade Secrets and Confidential Information, and Further Engage in Unfair Competition**

87.     Unless this Court restrains Symrise from continuing to tortiously interfere with Refresco's contractual relationships with its current and former employees, including, but not limited to, Polhamus, Ly, Gee, Pontes, Klaybor, and Jackson, Refresco will suffer substantial and irreparable injury, including: (1) the loss of and/or damage to its goodwill; (2) damage to its goodwill with its customer relationships; (3) the wrongful use and exploitation of Refresco's trade secrets and confidential and proprietary information; and (4) the loss of the basic protection created by the restrictive covenants applicable to Polhamus, Ly, Gee, Pontes, Klaybor, Jackson, and other Refresco employees.

88.     Refresco cannot estimate with any certainty the nature and extent of its potential injures resulting from Symrise's wrongful conduct.

89.     As such, the damages and injuries threatened by such wrongful conduct are irreparable, and Refresco has no adequate remedy at law.

## FIRST COUNT
**(Violation of New Jersey Uniform Trade Secrets Act, N.J.S.A. 56:15-1, *et seq.*)**

90.     Refresco repeats the allegations in the above paragraphs as if fully set forth.

91.     As described above, Symrise used improper means to misappropriate Refresco's confidential information and trade secrets, and used that confidential information and trade secrets to steal and/or attempt to steal Refresco's customers, orchestrate and execute the Lift Out, and obtain an unfair competitive advantage.

92.     Refresco's confidential information and trade secrets include information, business data compilations, and other documents which derive independent economic value,

actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, Symrise and other Refresco competitors who can obtain economic value from its disclosure or use; and are the subject of reasonable efforts by Refresco to maintain its secrecy.

93.     Symrise's misconduct was and remains willful and malicious.

94.     Symrise's misconduct has damaged Refresco and violates New Jersey's Uniform Trade Secrets Act, N.J.S.A. 56:15-1, *et seq*.

95.     Refresco is entitled to injunctive relief under N.J.S.A. 56:15-3.

96.     Refresco is entitled to damages, including damages reflecting the actual loss caused by Symrise's misappropriation of Refresco's confidential information, punitive damages in an amount not exceeding twice that amount under N.J.S.A. 56:15-4, and reasonable attorney's fees and costs, including a reasonable sum to cover the service of expert witnesses, under N.J.S.A. 56:15-6.

## SECOND COUNT
### (Civil Conspiracy)

97.     Refresco repeats the allegations in the above paragraphs as if fully set forth.

98.     Symrise conspired with Polhamus, O'Keefe, Pontes, Gee, and Ly to steal Refresco's trade secret and confidential information, orchestrate and execute the Lift Out, and divert Refresco's business opportunities without justification or excuse.

99.     Symrise, Polhamus, O'Keefe, Pontes, Gee, and Ly engaged in numerous overt acts to further their conspiracy as described above.

100.    Symrise's conduct has damaged Refresco by harming its good will, causing the loss of **seventy-five percent** (75%) of the Company's Senior Leadership for Research and Development for the Company's North America Business Unit, and compromising Refresco's confidential information and trade secrets.

19

101.   Refresco is entitled to damages resulting from Symrise's civil conspiracy, in an amount to be determined.

### THIRD COUNT
### (Aiding and Abetting Breach of Duty of Loyalty.)

102.   Refresco repeats the allegations in the above paragraphs as if fully set forth.

103.   Symrise knew that Polhamus, O'Keefe, Ly, Gee, Pontes, and Klaybor were employees of Refresco.

104.   Upon information and belief, Symrise knowingly and substantially assisted, induced, aided, and/or caused Polhamus, O'Keefe, Ly, Gee, Pontes, and Klaybor to breach their duty of loyalty to Refresco.

105.   Symrise substantially profited from Polhamus's, O'Keefe's, Ly's, Gee's, Pontes's, and Klaybor's breach of their duty of loyalty to Refresco.

106.   As a direct and proximate result of Symrise aiding and Polhamus's, O'Keefe's, Ly's, Gee's, Pontes's, and Klaybor's breach of their duty of loyalty, Refresco has been damaged.

### FOURTH COUNT
### (Tortious Interference with Contract)

107.   Refresco repeats the allegations in the above paragraphs as if fully set forth.

108.   Refresco has an economic interest in maintaining the integrity of its agreements with its employees, including Polhamus, O'Keefe, Ly, Gee, Pontes, Jackson, and Klaybor.

109.   The respective Agreements between Polhamus, Ly, Gee, Pontes, Jackson, Klaybor, and Refresco are enforceable contracts between the parties.

110.   Symrise knew or should have known that Polhamus's, O'Keefe's, Ly's, Gee's, Pontes's, Jackson's, and Klaybor's employment with Refresco were governed by their Agreements.

111.    The direct and/or indirect acts of commission and/or omission of Symrise created an atmosphere in which Polhamus, O'Keefe's Ly, Gee, Pontes, Jackson, and Klaybor were directly or indirectly induced, solicited, and/or encouraged to breach their Agreements with Refresco to benefit Symrise at Refresco's expense.

112.    The direct and/or indirect acts of commission and/or omission of Symrise aided and/or abetted Polhamus, O'Keefe, Ly, Gee, Pontes, Jackson, and Klaybor in the breach of their Agreements with Refresco.

113.    As a direct and proximate result of their acts and/or omissions, Symrise has and will continue to cause Refresco to suffer damages.

## FIFTH COUNT
### (Tortious Interference with Contractual/Business Relations)

114.    Refresco repeats the allegations in the above paragraphs as if fully set forth.

115.    Symrise conspired with Polhamus, O'Keefe, Ly, Pontes, and Gee to improperly misuse and exploit Refresco's confidential information; divert business opportunities away from Refresco and towards Symrise and Califormulations; exploit Refresco's confidential information for Symrise's and Califormulations's benefit; and orchestrate and execute the Lift Out.

116.    Symrise used improper means and methods to perpetrate their wrongful acts against Refresco without justification or excuse.

117.    Because of Symrise's wrongful acts, Refresco has lost business opportunities, their employees, and the benefit of client relationships and goodwill developed at Refresco's expense.

118.    Symrise's actions have caused, and will continue to cause, Refresco immediate and irreparable harm.

119.    Refresco has no adequate remedy at law.

120.    Refresco is therefore entitled to a temporary restraining order, preliminary injunctive relief, compensatory damages, and punitive damages.

## SIXTH COUNT
### (Unfair Competition)

121.    Refresco repeats the allegations in the above paragraphs as if fully set forth.

122.    Symrise has used, and continues to use, Refresco's confidential information and trade secrets to gain an unfair competitive business advantage for itself to the detriment of Refresco.

123.    Symrise accomplished the foregoing through a variety of unlawful means and methods.

124.    As a direct result of Symrise's wrongful acts, Refresco has been damaged.

125.    By reason of the foregoing, Symrise is liable to Refresco for compensatory and punitive damages in an amount to be determined.

## SEVENTH COUNT
### (Unjust Enrichment)

126.    Refresco repeats the allegations in the above paragraphs as if fully set forth.

127.    Due to the wrongful acts described above, Symrise has been unjustly enriched at Refresco's expense.

128.    Because of Symrise's wrongful acts, Refresco has been damaged.

129.    By reason of the foregoing, Symrise is liable to Refresco for compensatory and punitive damages in an amount to be determined.

**WHEREFORE**, Refresco Beverages US Inc. and Refresco Beverages LLC demand judgment in its favor and against Symrise Inc.:

(1)     Granting a temporary, preliminary and permanent injunction enjoining and restraining Symrise from using any Refresco trade secrets, confidential information, or proprietary information.

(2)     Granting a temporary, preliminary and permanent injunction enjoining and restraining Symrise from tortiously interfering with Refresco's Agreements with its employees;

(3)     Granting a temporary, preliminary and permanent injunction enjoining and restraining Symrise and any other person or entity from aiding, abetting, or assisting Polhamus, O'Keefe, Ly, Gee, Pontes, Jackson, or Klaybor from engaging in any activity which violates their post-employment obligations.

(4)     Awarding compensatory damages to Plaintiffs (including, but not limited to, the recovery of the profits lost by Plaintiffs or gained by Symrise and business disruption costs).

(5)     Awarding attorneys' fees and costs to Plaintiffs.

(6)     Awarding punitive damages to Plaintiffs.

(7)     Awarding interest and costs of suit to Plaintiffs; and

(8)     Awarding such other and further relief as the Court may deem just and proper.

FORDHARRISON LLP

By:   s/*Mark A. Saloman*
        Mark A. Saloman
        300 Connell Drive, Suite 4100
        Berkeley Heights, New Jersey 07922
        Phone: (973) 646-7300
        *Attorneys for Plaintiffs*
        *Refresco Beverages US Inc. and Refresco*
        *Beverages LLC*

23

Dated:  May 13, 2019

## VERIFICATION

I, Lisa Eilers, declare that I am the Vice President of Human Resources for Refresco Beverages US Inc., and am authorized to make this verification on its behalf. I have read the foregoing Verified Complaint and know the facts stated therein to be true and correct to the best of my knowledge, information, and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: May 13, 2019

_____
LISA EILERS

WSACTIVELLP:10530703.1