UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| REFRESCO BEVERAGES US INC. and REFRESCO BEVERAGES LLC,<br><br>      Plaintiffs,<br><br>      v.<br><br>SYMRISE INC.,<br><br>      Defendant. | Civil Action No.: |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' APPLICATION FOR INJUNCTIVE RELIEF AGAINST DEFENDANT**

**FORD & HARRISON LLP**
300 Connell Drive, Suite 4100
Berkeley Heights, New Jersey 07922
Phone: (973) 646-7300
*Attorneys for Plaintiffs*
*Refresco Beverages US Inc. and Refresco Beverages LLC*

**Of Counsel:**

Mark A. Saloman, Esq.

**On the Brief:**

Mark A. Saloman, Esq.
Chelsey Lewis, Esq.

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................ 1

STATEMENT OF FACTS .......................................................................................... 2

LEGAL ARGUMENT ................................................................................................. 3

I.    REFRESCO SATISFIES THE LEGAL STANDARD FOR AN INJUNCTION ............................................................................................... 3

    A.    REFRESCO WILL SUFFER IMMEDIATE AND IRREPARABLE HARM ABSENT AN INJUNCTION STOPPING DEFENDANT'S CONDUCT ............. 3

    B.    REFRESCO IS LIKELY TO SUCCEED ON THE MERITS OF ITS CLAIMS 6

       1.    Refresco Is Likely To Succeed On The Merits Of Its New Jersey Trade Secrets Act Claim. ................................................................. 6

       2.    Refresco Is Likely To Succeed On The Merits Of Its Civil Conspiracy Claim. .................................................................. 8

       3.    Refresco Is Likely To Succeed On The Merits Of Its Aiding and Abetting Breach Of Loyalty Claim. ................................................. 9

       4.    Refresco Is Likely To Succeed On The Merits Of Its Tortious Interference with Contractual and Business Relations Claim. .......... 11

       5.    Refresco Is Likely To Succeed On The Merits Of Its Unfair Competition Claim. ....................................................................... 12

       6.    Refresco Is Likely To Succeed On The Merits Of Its Unjust Enrichment Claim. ....................................................................... 13

    C.    SYMRISE WILL SUFFER NO UNDUE HARM UNDER AN INJUNCTION.. 14

    D.    THE REQUESTED INJUNCTIVE RELIEF ADVANCES THE PUBLIC INTEREST. ............................................................................................... 15

CONCLUSION .......................................................................................................... 16

## TABLE OF AUTHORITIES

**Page**

*A. Hollander & Son v. Imperial Fur Blending Corp.*, 2 N.J. 235 (N. J. 1949) ............................ 16

*Banco Popular N. Am. v. Gandi*, 184 N.J. 161 (N.J. 2005) .......................................................... 8

*Baxter Healthcare Corp. v. HQ Specialty Pharma Corp.*, 157 F. Supp. 3d 407 (D.N.J. 2016) .... 6

*Boost Co. v. Faunce*, 13 N.J. Super. 63 (N.J. Ch. 1951) ............................................................. 16

*County of Essex v. First Union Nat. Bank*, 373 N.J. Super. 543 (N.J. Super. Ct. App. Div. 2004) ................................................................................................................................................ 13

*Cameco, Inc. v. Gedicke*, 157 N.J. 504, 516, 724 A.2d 783, 789 (1999) .................................... 10

*Darsyn Labs., Inc. v. Lenox Labs., Inc.*, 120 F. Supp. 42 (D.N.J. 1954) ..................................... 16

*DiMaria Constr. v. Interarch*, 351 N.J. Super. 558 (N.J. Super. Ct. App. Div. 2001) ................. 11

*Ford Motor Co. v. Edgewood Props.*, Civil Action No. 06-4266 (HAA), 2009 U.S. Dist. LEXIS 4172, at *34-35 (D.N.J. Jan. 20, 2009) ...................................................................................... 9

*Hoffman La Roche Inc. v. Genpharm Inc.*, 50 F. Supp. 2d 367 (D.N.J. 1999) ............................ 12

*Ideal Laundry Co. v. Gugliemone*, 107 N.J. Eq. 108 (N.J. Eq. 1930) ........................................... 4

*Ingersoll-Rand Co. v. Ciavatta*, 110 N.J. 609, 628 (1988) ..................................................... 15-16

*Jackson Hewitt, Inc. v. Barnes Enters.*, No. 10-cv-05108, 2012 U.S. Dist. LEXIS 63784 (D.N.J. May 7, 2012) .................................................................................................................. 4

*Jiffy Lube Int'l v. Weiss Bros*, 834 F. Supp. 683 (D.N.J. 1993) .................................................. 14

*Johnson v. Benjamin Moore & Co.*, 347 N.J. Super. 71 (N.J. Super. Ct. App. Div. 2002) ......... 15

*King's Choice Neckwear, Inc. v. FedEx Corp.*, No. 07-0275, 2007 U.S. Dist. LEXIS 93843, at *10-11 (D.N.J. Dec. 21, 2007) .............................................................................................. 9-10

*Kos Pharmaceuticals, Inc. v. Andrx Corp.*, 369 F.3d 700 (3d Cir. 2004) ..................................... 3

*Lamorte Burns & Co. v. Walters*, 167 N.J. 285, 303-04, 770 A.2d 1158, 1169 (2001) ............... 10

*Levin v. Kuhn Loeb & Co.*, 174 N.J. Super. 560 (N.J. Super. Ct. App. Div. 1980) ..................... 11

*LifeCell Corp. v. Tela Bio Inc.*, 2015 N.J. Super. Unpub. LEXIS 1608 (N.J. Super. Ct. Ch. Div. 2015) ........................................................................................................................................ 13

*Louis Schlesinger Co. v. Rice*, 4 N.J. 169 (1950) ....................................................................... 11

*MacDougall v. Weichert*, 144 N.J. 380, 404 (1996)), *aff'd*, 172 N.J. 182 (2002) ....................... 11

*MK Strategies, LLC v. Ann Taylor Stores Corp.*, 567 F. Supp. 2d 729 (D.N.J. 2008) ................ 13

*Morgan v. Union County Bd. of Chosen Freeholders*, 268 N.J. Super. 337 (1993) ...................... 8

*Mu Sigma, Inc. v. Affine, Inc.*, No. 12-1323 (FLW), 2013 U.S. Dist. LEXIS 99538, at * 8 (D.N.J. July 17, 2013) ............................................................................................................................. 7

*Nat'l Reprographics v. Strom*, 621 F. Supp. 2d 204 (D.N.J. 2008) ......................................... 4, 15

*Nat'l Starch & Chem. Corp. v. Parker Chem. Corp.*, 530 A.2d 31 (N.J. Super. Ct. App. Div. 1987) .................................................................................................................................... 5

*N.J. Dep't of Treasury v. Qwest Commc'ns Int'l, Inc.*, 387 N.J. Super. 469, 481 (N.J. Super. Ct. App. Div. 2006) ............................................................................................................... 10

*New Jersey Optometric Assn. v. Hillman-Kohan Eyeglasses, Inc.*, 144 N.J. Super. 411,
    365 A.2d 956 (N.J. Super. Ct. Ch. Div. 1976) ......................................................................... 12

*Opticians Ass'n of Ant v. Independent Opticians of Am.*, 920 F.2d 187, 195 (3d Cir. 1990) ................ 3

*Pappan Enterprises v. Hardee's Food Systems*, 143 F.3d 800 (3d Cir. 1998) ............................... 3

*Par Pharm., Inc. v. QuVa Pharma, Inc.*, 2018 U.S. Dist. LEXIS 43612 WL 1374023,
    (D.N.J. Mar. 16, 2018) ............................................................................................................. 6

*PepsiCo, Inc. v. Redmond,* 54 F.3d 1262, 1269-1270 (7th Cir. 1995) ................................................ 15

*Verizon Comm. Inc. v. Pizzirani,* 462 F. Supp. 2d 648, 658 (E.D. Pa. 2006) ................................. 3

*Printing Mart v. Sharp Elec. Corp.*, 116 N.J. 739 (1989) ............................................................. 11

*Rohm and Haas Co., v. Adco Chem. Co.*, 689 F.2d 424 (3d Cir. 1982) ....................................... 12

*Ryan v. Carmona Bolen Home for Funerals*, 341 N.J. Super. 87, 775 A.2d 92
    (N.J. Super. Ct. App. Div. 2001) ............................................................................................ 12

*SCS Healthcare Mktg. v. Allergan USA, Inc.*, No. c-268-12, 2012 N.J. Super. Unpub. LEXIS 2704 (Ch. Div. Dec. 7, 2012) ................................................................................................... 6

*S & R Corp. v. Jiffy Lube Int'l, Inc.*, 968 F.2d 371 (3d Cir. 1992) ................................................. 3

*Samsung Am. Inc. v. Park*, 2006 WL 3627072 (N.J. Super. Ct. Ch. Div. Dec. 11, 2006) ............. 6

*Singer v. A. Hollander & Son, Inc.*, 110 F. Supp. 71 (D.N.J. 1952) ............................................... 4

*Stone v. Goss*, 65 N.J. Eq. 756 (1903) ............................................................................................ 16

*Va. Sur. Co. v. Macedo*, Civil Action No. 08-5586 (GEB), 2011 U.S. Dist. LEXIS 49077, at *58 (D.N.J. May 6, 2011) ............................................................................................................... 8

*VRG Corp. v. GKN Realty Corp.*, 135 N.J. 539, 554, 641 A.2d 519 (1994)), *aff'd, remanded by* 186 N.J. 46 (2006). .................................................................................................................. 13

Plaintiffs Refresco Beverages US Inc. ("Refresco" or the "Company"[1]) and Refresco Beverages LLC (collectively, "Plaintiffs"), seek a temporary restraining order and preliminary injunction to prohibit Defendant Symrise Inc. ("Symrise") from: (1) engaging in unfair competition; (2) misappropriating Refresco's trade secrets and confidential information; (3) tortiously interfering with the contractual relationships between Refresco and its current or former employees; and (4) aiding and abetting Refresco's employees from breaching their duty of loyalty to Refresco.

## PRELIMINARY STATEMENT

This case arises from a *carefully planned and executed theft of trade secrets and unlawful raid on a competitor* by Symrise. Refresco is a company that engages in producing, manufacturing, packaging, and distributing retailer brand beverages in the United States. Symrise is a direct competitor. In the months preceding Refresco's purchase of Refresco Beverages LLC f/k/a Cott Beverages LLC, Symrise conspired with former Refresco Beverages Vice President of Technical Services & Operations Tyrone Polhamus ("Polhamus") and former Refresco Beverages President Edmund O'Keefe ("O'Keefe") (*while they were still employed by the Company*) to secretly create a new beverage (*using Refresco's trade secrets, resources, and employees*) for Symrise's client, "Client A,"[2] and to establish a "NewCo" to directly compete with Refresco. In furtherance of this plan, Symrise, Polhamus, and O'Keefe orchestrated the hire away (or "Lift Out") of 75% of the Company's Senior Leadership for Research and Development to go work for the "NewCo" which became Califormulations LLC, a company in which Symrise is significantly invested. *See*

---

[1] For the purposes of this Complaint, the "Company" shall refer collectively to Refresco, Cott Beverages Inc., and Cott Beverages LLC.

[2] At this time the name of this client is being withheld.

https://www.bevnet.com/news/supplier-news/2019/symrise-announces-califormulations-llc-beverage-innovation-platform/.

Compounding this impropriety, Symrise, with the assistance of several of Refresco's defector employees, misused, exploited, and misappropriated the Company's trade secret and confidential information to perform top-secret work on behalf of Symrise (***unbeknownst to Symrise's client, Client A***) and perpetuate the Lift Out. For several months, Symrise and Polhamus, along with several defector employees of the Company, covertly worked together to misappropriate the Company's trade secrets and confidential information and create a "NewCo" aka Califormulations to employ Refresco's former employees and directly compete with Refresco in Columbus, Georgia. Aware that Refresco's employees owed Refresco a duty of loyalty and were subject to employment agreements containing certain restrictive covenants, without privilege, Symrise intentionally induced, by improper means, these employees to conspire with them to set up the "NewCo" aka Califormulations. Through these and other actions, Symrise has engaged in unfair competition, misappropriated Refresco's trade secrets and confidential information, and tortiously interfered with Refresco's agreements and relationships, and the Company seeks redress against Symrise for the harm it has suffered and to safeguard its continuing legal rights.

For those reasons, and the reasons set forth in greater detail below, Plaintiffs' motion for a preliminary injunction should be granted.

## STATEMENT OF FACTS

The pertinent facts are stated in Plaintiffs' Verified Complaint ("Compl., ¶ ___") and attached Exhibits, submitted herewith and incorporated herein by reference.

2

## LEGAL ARGUMENT

### I. REFRESCO SATISFIES THE LEGAL STANDARD FOR AN INJUNCTION

New Jersey courts have long recognized the necessity for interlocutory injunctive relief to prevent irreparable injury. In deciding whether to grant preliminary injunctive relief, a district court must consider four factors: (1) the likelihood that plaintiff will prevail on the merits; (2) the extent to which plaintiff is being irreparably harmed by the conduct complained of; (3) the extent to which defendant will suffer irreparable harm if the preliminary injunction is issued; and (4) the public interest. *Kos Pharmaceuticals, Inc. v. Andrx Corp.*, 369 F.3d 700, 703 (3d Cir. 2004); *Pappan Enterprises v. Hardee's Food Systems*, 143 F.3d 800, 802 (3d Cir. 1998); *see, e.g., S & R Corp. v. Jiffy Lube Int'l, Inc.*, 968 F.2d 371, 374 (3d Cir. 1992). Refresco satisfies each prong of the test and is therefore entitled to the injunctive relief it seeks.

#### A. REFRESCO WILL SUFFER IMMEDIATE AND IRREPARABLE HARM ABSENT AN INJUNCTION STOPPING DEFENDANT'S CONDUCT

Refresco will suffer immediate, substantial, and irreparable hardship because of Symrise's wrongful conduct unless a temporary restraining order or a preliminary injunction is granted. "Irreparable harm" is demonstrated by actual or threatened injury, which cannot be adequately addressed by monetary damages. *See Opticians Ass'n of Ant v. Independent Opticians of Am.*, 920 F.2d 187, 195 (3d Cir. 1990). There is no greater potential of irreparable harm than disclosing a company's confidential business methodology to its competitors. *See, e.g., Verizon Comm. Inc. v. Pizzirani*, 462 F. Supp. 2d 648, 658 (E.D. Pa. 2006) (finding irreparable harm where defendant had information entitled to trade secret protection and intended to work for a direct competitor).

In New Jersey, "[w]here the employee through his employment has learned of the business practices and methods of his employer which if disclosed to a competitor may result in irreparable injury to the complainant, the court may presume irreparable injury will ensue from the breach of

3

the covenant." *Singer v. A. Hollander & Son, Inc.*, 110 F. Supp. 71, 80 (D.N.J. 1952) (emphasis added) (citing *Ideal Laundry Co. v. Gugliemone*, 107 N.J. Eq. 108, 114 ((N.J. Eq. 1930), *aff'd*, 202 F. 2d 55 (3d Cir. 1953)); *see Nat'l Reprographics v. Strom*, 621 F. Supp. 2d 204, 229-230 (D.N.J. 2008) (finding irreparable harm to former employer would result where defendant had access to former employer's business strategies that defendant would inevitably use for the benefit of his new employer, who was a direct competitor of plaintiff). Where, as here, a party has another party's confidential information and is poised to use or disclose such information, there also is a likelihood of irreparable harm. *See Jackson Hewitt, Inc. v. Barnes Enters.*, No. 10-cv-05108, 2012 U.S. Dist. LEXIS 63784, at *10 (D.N.J. May 7, 2012) ("The irreparable harm in this matter flows from Defendant's possession of, and ability to use or disclose, [the plaintiff's confidential and proprietary information and trade secrets].").

Here, Refresco's employees retained an intimate and comprehensive understanding of Refresco's confidential information and trade secrets, especially concerning Refresco's formulae (specifically including, but not limited to cola formulae), laboratory processes and procedures, know-how, competitive advantage, manufacturing costs, marketing plans and techniques, cost and pricing figures, customer lists, supplier lists, software, and information relating to Refresco's employees, suppliers, customers, and persons in contractual relationships with Refresco. (Compl. ¶ 24). Polhamus, O'Keefe, Ly, Pontes, Klaybor, Jackson, and Gee agreed to maintain and protect Refresco's confidential information. (Compl. ¶¶ 17-23). Here, **while employed by Refresco**, Refresco's employees (including at least Polhamus, Ly, and Gee) conspired with Symrise to: (1) create "NewCo" aka Califormulations; (2) develop a top-secret formula for a new non-alcoholic drink on behalf of Symrise's client – without the client's knowledge; (3) Symrise passed the formula off as its own: and (4) stole that formula away from Plaintiffs.

If Symrise is allowed to continue to exploit what it conspired to steal and, in fact, did steal from Plaintiffs, Symrise will continue to be able to exploit Refresco's trade secret and confidential information to gain an unfair advantage over Refresco by diverting and converting Refresco's revenues, causing irreparable injury to Refresco. Without exclusive use of its formulas, Refresco loses its competitive advantage, as customers buy from Refresco due to its formulas. Symrise's exploitation of these now former Refresco employees' knowledge of Refresco's confidential information allows Symrise to unfairly sidestep the time, effort, and expense of developing its own formulas, which it clearly was unable to do without its surreptitious misappropriate of Refresco's confidential information.

Moreover, the intangible which is impaired—(1) the loss of and/or damage to its goodwill; (2) damage to its goodwill with its customer relationships; (3) the wrongful use and exploitation of Refresco's trade secrets and confidential and proprietary information; and (4) the loss of the basic protection created by the restrictive covenants applicable to Refresco's former employees—is an economic loss that cannot be fully compensated by a damage award, and thus, can *only* be prevented by injunctive relief. *See Nat'l Starch & Chem. Corp. v. Parker Chem. Corp.*, 530 A.2d 31, 33 (N.J. Super. Ct. App. Div. 1987) (finding damages will not be an adequate remedy when the competitor has obtained former employer's trade secrets because "[t]he cat is out of the bag and there is no way of knowing to what extent their use has caused damage or loss.").

Additionally, on behalf of Califormulations and itself, Symrise has already pirated at least five long-term Refresco employees and continues to attempt to poach others subject to similar agreements. Symrise is effectively attempting to destroy Refresco's Research and Development business, and has already lured away approximately **seventy-five percent** of Refresco's Senior Leadership for Research and Development for the North American Business Unit. Refresco's

Research and Development department is dependent upon these individuals to function. This kind of loss constitutes "irreparable harm." As a direct competitor of Refresco, unless enjoined, Symrise will obtain, through inducing Refresco's employees to violate their Agreements and resign en masse from Refresco, the benefit of Refresco's investment and the use of Refresco's trade secrets and confidential information.

By contrast, the grant of a temporary restraining order or preliminary injunction to Symrise merely will cause it to compete fairly with Refresco and operate its business in a lawful manner without interfering with Refresco's employment relationships.

### B. REFRESCO IS LIKELY TO SUCCEED ON THE MERITS OF ITS CLAIMS

#### 1. Refresco Is Likely To Succeed On The Merits Of Its New Jersey Trade Secrets Act Claim.

Violations of the New Jersey Trade Secrets Act ("NJTSA") require: "(1) the existence of a trade secret and (2) the misappropriation of that secret." *Par Pharm., Inc. v. QuVa Pharma, Inc.*, No. 17-6115-BRM-DEA, 2018 U.S. Dist. LEXIS 43612, at *6 (D.N.J. Mar. 16, 2018) (citing N.J.S.A. 56:15-2). The NJTSA provides for "[i]njunctive relief for actual or threatened misappropriation of a trade secret." *SCS Healthcare Mktg. v. Allergan USA, Inc.*, No. c-268-12, 2012 N.J. Super. Unpub. LEXIS 2704, at *9 (Ch. Div. Dec. 7, 2012).

The essential inquiry for a trade secret is whether the information derives economic value, the information is not readily ascertainable by other means, and the holder endeavors for it to remain confidential. *Baxter Healthcare Corp. v. HQ Specialty Pharma Corp.*, 157 F. Supp. 3d 407, 423 (D.N.J. 2016) (quoting N.J.S.A. 56:15-2); *see also Samsung Am. Inc. v. Park*, 2006 WL 3627072, at *16 (N.J. Super. Ct. Ch. Div. Dec. 11, 2006) (citing Restatement (First) of Torts § 757 cmt. b (Am. Law Inst. 1939)) (listing six factors, including the extent known inside and outside

6

business, measures taken to guard secrecy, value of information to business and competitors, money and effort expended in developing information, ease with which acquired or duplicated). A plaintiff must have taken "precautions to maintain the secrecy of the trade secret." *Mu Sigma, Inc. v. Affine, Inc.*, No. 12-1323 (FLW), 2013 U.S. Dist. LEXIS 99538, at * 8 (D.N.J. July 17, 2013).

Here, a court is likely to find that Symrise's actions constitute a violation of the NJTSA. First, Polhamus, Ly, Gee, O'Keefe, Pontes, Klaybor, and Jackson had access to Refresco's confidential information and trade secrets, as described *supra*, including formulae (specifically including, but not limited to cola formulae), laboratory processes and procedures, know-how, competitive advantage, manufacturing costs, marketing plans and techniques, cost and pricing figures, customer lists, supplier lists, software, and information relating to Refresco's employees, suppliers, customers, and persons in contractual relationships with Refresco. This information: (1) is not known outside Refresco; (2) is known only by Refresco employees, including Polhamus, Ly, Gee, O'Keefe, Pontes, Klaybor, Jackson, and others involved in the business; (3) is subject to reasonable measures to guard the secrecy of the information, including their Agreements and other policies; (4) is valuable; and (5) is difficult for others to properly acquire or independently duplicate. (Compl., ¶¶ 25-28). Moreover, Refresco's confidential information is closely guarded at Refresco and Refresco takes reasonable steps to ensure its secrecy and confidentiality. (Compl., ¶ 25, 92). This information was related to multiple products or services used in, or intended for use in, interstate commerce. (Compl., ¶ 26).

Second, Symrise illegally misappropriated these trade secrets through improper means when it conspired with Polhamus, Ly, and Gee to steal this information to further its tortious conduct directed at Refresco, including perpetrating the Lift Out. (Compl., ¶¶ 62-71).

7

Symrise knew that Polhamus, Ly, and Gee had a duty as then-incumbent Refresco employees to maintain the secrecy of Refresco's confidential information and trade secrets. (Compl., ¶ 83). However, Symrise misappropriated and used this information to cause Refresco harm and without Refresco's knowledge, consent, or authorization to benefit Symrise and Califormulations in a manner that will cause irreparable harm to Refresco. (Compl., ¶¶ 90-94). Symrise's knowing receipt and acceptance of Refresco's misappropriated confidential information constitutes actual and continuing misappropriation in violation of both statutory schemes. (Compl., ¶¶ 90-94).

Accordingly, Refresco has demonstrated a reasonable likelihood of success as to its claims for misappropriation of trade secrets under the NJTSA.

### 2. Refresco Is Likely To Succeed On The Merits Of Its Civil Conspiracy Claim.

Refresco is also likely to succeed on its civil conspiracy claim against Symrise. Under New Jersey law, a civil conspiracy is "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, a principal element of which is to inflict a wrong against or injury upon another, and an overt act that results in damage." *Banco Popular N. Am. v. Gandi*, 184 N.J. 161, 177 (N.J. 2005). "To establish a conspiracy, it simply must be shown that there was a single plan, the essential nature and general scope of which [was] known to each person which is to be held responsible for its consequences." *Morgan v. Union County Bd. of Chosen Freeholders*, 268 N.J. Super. 337, 364 (1993). "A plaintiff need not show express agreement. 'It is enough [for liability] if you understand the general objectives of the scheme, accept them, and agree, either explicitly or implicitly, to do your part to further them.'" *Va. Sur. Co. v. Macedo*, Civil Action No. 08-5586 (GEB), 2011 U.S. Dist. LEXIS 49077, at *58 (D.N.J. May 6, 2011) (quoting *Banco Popular*, 184 N.J. at 177). "The heart of the claim is not the unlawful agreement, but the wrong which lies beneath the surface of the conspiracy. Furthermore, a civil

8

conspiracy can be inferred from circumstantial evidence as direct evidence of a civil conspiracy can rarely be shown." *Ford Motor Co. v. Edgewood Props.*, Civil Action No. 06-4266 (HAA), 2009 U.S. Dist. LEXIS 4172, at *34-35 (D.N.J. Jan. 20, 2009) (citation omitted).

Here, there is compelling evidence that Symrise, Polhamus, O'Keefe, Ly, Pontes, and Gee engaged in a civil conspiracy. Specifically, Symrise conspired with Polhamus, O'Keefe, Ly, Pontes, and Gee, and together they orchestrated and executed a mass exodus resulting in the Lift Out of at least five (5) Refresco employees—75% of Refresco's Senior Leadership for Research and Development for the Company's North America Business Unit. (Compl., ¶¶ 78-79). To perpetuate the Lift Out, Symrise, Polhamus, O'Keefe, Ly, Pontes, and Gee misused, exploited, and misappropriated Refresco's confidential information while they were still employed by Refresco. The clear goal of Symrise was to undermine the integrity of Refresco's Research and Development Department for the Company's North America Business Unit from within and cause the department to be so understaffed as to force Refresco's customers to look elsewhere for the beverage development needs.

It is unambiguous that Symrise, Polhamus, O'Keefe, Ly, Pontes, and Gee conspired with one another to steal Refresco's confidential business information, orchestrate and execute the Lift Out, and divert Refresco's business opportunities without justification or excuse. (Compl., ¶¶ 62-79). Accordingly, Refresco has demonstrated a reasonable likelihood of success as to it claim for civil conspiracy.

        **3.    Refresco Is Likely To Succeed On The Merits Of Its Aiding and Abetting Breach Of Loyalty Claim.**

Under New Jersey Law, an "aiding and abetting" claim arises "where one party is aware of another party's breach of duty and helps or encourages that breach." *King's Choice Neckwear, Inc. v. FedEx Corp.*, No. 07-0275, 2007 U.S. Dist. LEXIS 93843, at *10-11 (D.N.J. Dec. 21, 2007)

9

(denying motion to dismiss claim that "[defendant] AFG conspired with or aided and abetted [defendant] FedEx to breach the latter's contracts with Plaintiff") (citing *N.J. Dep't of Treasury v. Qwest Commc'ns Int'l, Inc.*, 387 N.J. Super. 469, 481 (N.J. Super. Ct. App. Div. 2006)) (opinion of Cavanaugh, J.). "[A]lthough an employee has the right to make preparations to start a competing business, the employee may not breach the undivided duty of loyalty he or she owes to his or her employer while still employed by soliciting the employer's customers or engaging in other acts of secret competition." *Lamorte Burns & Co. v. Walters*, 167 N.J. 285, 303-04, 770 A.2d 1158, 1169 (2001). "The duty of loyalty prohibits the employee from taking affirmative steps to injure the employer's business." *Id.* at 305.

Here, Symrise, enticed Polhamus's, O'Keefe's, Ly's, Gee's, Pontes's, and Klaybor's breach of their duty of loyalty while having knowledge of these individuals' duty of loyalty to Refresco. Specifically, Symrise induced O'Keefe, Polhamus, Ly, Gee, and Pontes, while they were still employed by Refresco, to secretly create a new beverage, using Refresco's trade secrets, resources, and employees, for Symrise's client, and to establish a "NewCo" to directly compete with Refresco. This is a clear breach of loyalty encouraged by Symrise. *See Cameco, Inc. v. Gedicke*, 157 N.J. 504, 516, 724 A.2d 783, 789 (1999) ("Assisting an employer's competitor can constitute a breach of the employee's duty of loyalty."); *Lamorte Burns & Co.*, 167 N.J. at 304-05 ("Based on the evidence in this record, we agree with the trial court that defendants breached their duty of loyalty. Defendants' conduct while employed was clearly contrary to the interests of their employer.").

Accordingly, Refresco has demonstrated a reasonable likelihood of success as to its claims for aiding and abetting a breach of duty of loyalty.

10

4. **Refresco Is Likely To Succeed On The Merits Of Its Tortious Interference with Contractual and Business Relations Claim.**

Refresco is likely to succeed on its claim against Symrise for tortiously interfering with contractual relationships Refresco maintained with Polhamus, O'Keefe, Ly, Gee, Pontes, Klaybor, and Jackson while they were employed with Refresco, and additionally, following their separation from their employment with Refresco. Further, Symrise has tortiously interfered with Refresco's existing and prospective business advantage.

Tortious interference is well-recognized in New Jersey. *See, e.g., Louis Schlesinger Co. v. Rice*, 4 N.J. 169, 180-81 (1950); *Levin v. Kuhn Loeb & Co.*, 174 N.J. Super. 560, 571 (N.J. Super. Ct. App. Div. 1980); *Printing Mart v. Sharp Elec. Corp.*, 116 N.J. 739, 752 (1989). "Tortious interference developed under common law to protect parties to an existing . . . contractual relationship from outside interference." *Printing Mart*, 116 N.J. at 752. This tort consists of four elements: (1) a protectable interest; (2) malice; (3) a reasonable likelihood that the interference caused the loss of the prospective gain; and (4) resulting damages. *See DiMaria Constr. v. Interarch*, 351 N.J. Super. 558, 567 (N.J. Super. Ct. App. Div. 2001) (citing *MacDougall v. Weichert*, 144 N.J. 380, 404 (1996)), *aff'd*, 172 N.J. 182 (2002)). "Malice" means that "the interference was inflicted intentionally and without justification or excuse." *Id.* (citing *Printing Mart*, 116 N.J. at 751).

Refresco has a high likelihood of proving all of the elements of tortious interference. To begin, the Agreements represent a protected interest, and further, Refresco has an economic interest in maintaining the integrity of its agreements with its employees, including Polhamus, O'Keefe, Ly, Gee, Pontes, Klaybor, and Jackson. (Compl., ¶ 108). The Agreements evidence Refresco's protectable interests in its customer relations, trade secrets, and confidential information. Symrise is aware of the Agreements' provisions, but have and will continue to induce

11

Polhamus, O'Keefe, Ly, Gee, Pontes, Klaybor, Jackson, and other Refresco employees to violate them anyway. (Compl., ¶¶ 108-11). Symrise's interference with the Agreements is deliberate, unjustified, and malicious, and strikes right at the heart of Refresco's contractual rights. (Compl., ¶¶ 110-12). Moreover, the direct and/or indirect acts of commission and/or omission of Symrise created an atmosphere in which Polhamus, O'Keefe, Ly, Gee, Pontes, Klaybor, and Jackson were directly or indirectly induced, solicited, and/or encouraged to breach their Agreements with Refresco to benefit Symrise and Califormulations at Refresco's expense. (Compl., ¶ 111). Refresco, therefore, has demonstrated that it is likely to succeed on the merits of its claims for tortious interference against Symrise.

### 5. Refresco Is Likely To Succeed On The Merits Of Its Unfair Competition Claim.

The essence of unfair competition claims is to ensure fair play and to "promote higher ethical standards in the business world." *Ryan v. Carmona Bolen Home for Funerals*, 341 N.J. Super. 87, 92, 775 A.2d 92 (N.J. Super. Ct. App. Div. 2001). Thus, the "judicial goal should be to discourage, or prohibit the use of misleading or deceptive practices which renders competition unfair." *Id.* The tort of unfair competition "consists of the misappropriation of one's property by another—property which has some sort of commercial or pecuniary value." *New Jersey Optometric Assn. v. Hillman-Kohan Eyeglasses, Inc.*, 144 N.J. Super. 411, 427-428, 365 A.2d 956, 965 (Ch. Div. 1976) (citing 87 C.J.S. Trade-Marks, Trade-Names, and Unfair Competition § 13). New Jersey law has specifically held that the misappropriation of a trade secret constitutes unfair competition. *Hoffman La Roche Inc. v. Genpharm Inc.*, 50 F. Supp. 2d 367, 381 (D.N.J. 1999).[3]

---

[3] Under New Jersey law, a trade secret is a "formula, process, device or compilation which one uses in his business and which gives him an opportunity to obtain an advantage over competitors who do not know or use it." *Rohm and Haas Co., v. Adco Chem. Co.*, 689 F.2d 424, 431 (3d Cir.

12

Here, Symrise has used, and continues to use, Refresco's confidential information to gain an unfair competitive business advantage for themselves to the detriment of Refresco. (Compl., ¶ 122). The confidential information that Refresco alleges Symrise obtained constitutes a trade secret under New Jersey law, and Symrise has misappropriated it through a variety of unlawful means and methods, as thoroughly discussed, *supra*. (Compl. ¶ 122). As a result, Refresco is likely to succeed on the merits of its unfair competition claim. *See, e.g., LifeCell Corp. v. Tela Bio, Inc.*, No. SOM-C-12013-15, 2015 N.J. Super. Unpub. LEXIS 1608 (Ch. Div. May 12, 2015) (finding likelihood of success on the merits on unfair competition claim in non-compete/trade secrets case).

### 6. Refresco Is Likely To Succeed On The Merits Of Its Unjust Enrichment Claim.

Under New Jersey law, there are two basic elements of unjust enrichment. "A plaintiff must demonstrate both that defendant received a benefit and that retention of that benefit without payment would be unjust." *MK Strategies, LLC v. Ann Taylor Stores Corp.*, 567 F. Supp. 2d 729, 733 (D.N.J. 2008); *see also County of Essex v. First Union Nat. Bank*, 373 N.J. Super. 543, 549-50 (N.J. Super. Ct. App. Div. 2004) (quoting *VRG Corp. v. GKN Realty Corp.*, 135 N.J. 539, 554, 641 A.2d 519 (1994)), *aff'd, remanded by* 186 N.J. 46 (2006)).

As laid out at length in the foregoing, as well as Plaintiffs' Verified Complaint, Symrise has received a benefit by the poaching of Refresco's employees for Symrise and Califormulations. Refresco and Symrise compete head-to-head in the beverage industry. (Compl. ¶¶ 78, 85). Symrise's conduct has damaged Refresco by harming its good will, to the direct benefit of Symrise as a direct competitor, and has caused the loss of Refresco's employees, to the direct benefit of Symrise. (Compl. ¶¶ 122-24). Symrise received a direct benefit – i.e. gaining an unfair

---

1982). The purported trade secret cannot be a matter of public knowledge or of general knowledge within the industry. *Id.*

13

competitive advantage – through its actions in orchestrating and executing the Lift Out. (Compl. ¶¶ 1-3).

Symrise has also received a benefit of unfairly sidestepping the time, effort, and expense of fairly winning customers on a level playing field through the exploitation of Refresco's confidential information concerning its formulas, customers and its customer relationships. (Compl. ¶ 87). The misuse or exploitation of this information by Symrise allows it an unfair advantage over Refresco, and allows Symrise to divert and convert Refresco customers and revenues, to Symrise's benefit, causing irreparable injury to Refresco and its customer relations.

It is evident that Symrise has received a benefit and that the retention of that benefit without payment would be unjust. In common parlance, this is known as "theft." Simply put, Symrise has been unjustly enriched by virtue of unlawfully exploiting and misusing Refresco's confidential information without any legal detriment. (Compl. ¶¶ 127-28). Accordingly, Refresco has demonstrated a reasonable likelihood of success as to it claim for unjust enrichment.

        **C.**      **SYMRISE WILL SUFFER NO UNDUE HARM UNDER AN INJUNCTION.**

The balance of interests favors Refresco. Absent the injunctive relief requested, Refresco will be immeasurably and irreparably damaged because of lost business opportunities and the benefit of client relationships and goodwill developed at Refresco's expense. By contrast, Symrise will suffer no hardship—none—if injunctive relief is granted because the temporary restraining order and preliminary injunction would not prohibit Symrise from engaging in activity that is proper. *See Jiffy Lube Int'l v. Weiss Bros*, 834 F. Supp. 683, 693 (D.N.J. 1993) ("To the extent that the Defendants suffer significant, and in a sense irreparable, damage from the granting of the preliminary injunction, this harm is a predictable consequence of their willful breach of contract and their misconduct. As such, it is not the type of harm from which we seek to protect a

14

defendant."); *Nat'l Reprographics*, 621 F. Supp. 2d at 230 (no harm to the defendant where he knew of the restrictions of the agreement when he signed it and while his new employer could operate and compete with his former employer, it must do so without relying on the benefit of the knowledge and experience the defendant gained while working for the plaintiff for the limited duration of the contractual provision).

All Refresco asks is that Symrise be prohibited from continuing to illegally misuse and exploit trade secrets, confidential information, and customer relationships belonging to Refresco. Injunctive relief for a brief period under these unseemly circumstances will merely preserve the *status quo* and allow Refresco to stabilize its business operations pending resolution on the merits. Accordingly, the harm Symrise may suffer should the Court grant the relief requested will be insignificant when compared to the harm that Refresco has suffered, and will continue to suffer, if such relief is not granted. The balance of hardship, therefore, favors a grant of the requested injunctive relief on behalf of Refresco.

### D. THE REQUESTED INJUNCTIVE RELIEF ADVANCES THE PUBLIC INTEREST.

It is well established that public interest is advanced by securing all confidential information from misuse or disclosure. *See supra*, Section (I)(B)(f). Moreover, New Jersey public policy affords Refresco protection of its valuable property rights and legitimate business interests. Aptly characterized in *PepsiCo, Inc. v. Redmond*, Refresco now "finds [itself] in the position of a coach, one of whose players has left, play book in hand, to join the opposing team before the big game." 54 F.3d 1262, 1270 (7th Cir. 1995). This unlawful conduct violates the express public policy of New Jersey. *See Ingersoll-Rand Co. v. Ciavatta*, 110 N.J. 609, 639 (1988); *accord Johnson v. Benjamin Moore & Co.*, 347 N.J. Super. 71, 97 (N.J. Super. Ct. App. Div. 2002), *certif. denied*, 172 N.J. 181 (2002) (New Jersey "[t]rade secret law is designed to protect a continuing competitive

advantage, which a company enjoys due to confidential information it possesses, from destruction due to disclosure by a departed former employee.").

Our courts recognize that employers invest substantial sums in research and development. The public interest is served by maintaining incentives for corporations "to undertake long-range and extremely costly research and development programs." *Ingersoll,* 110 N.J. at 634. "The law recognizes a property right in [those] trade secrets, and a court of equity will protect the rights against invasion by one who appropriates the trade secrets to his own use in violation of a contractual obligation or confidential relationship." *Darsyn Labs., Inc. v. Lenox Labs., Inc.,* 120 F. Supp. 42, 54 (D.N.J. 1954), *aff'd,* 217 F.2d 648 (3d Cir. 1954), *cert. denied,* 349 U.S. 921 (1955) (citing *also A. Hollander & Son v. Imperial Fur Blending Corp.,* 2 N.J. 235 (N.J. 1949); *Boost Co. v. Faunce,* 13 N.J. Super. 63 (N.J. Ch. 1951), *aff'd,* 17 N.J. Super. 458, (N.J. Super. Ct. App. Div. 1952); *Stone v. Goss,* 65 N.J. Eq. 756 (1903)). Absent injunctive relief, Refresco's acknowledged legitimate business interests and valuable property rights will be trampled on by Symrise through its wrongful conduct, which will only encourage unfair competition that is injurious to public interest.

## CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that a temporary restraining order be issued, and thereafter a preliminary injunction be granted, as prayed for in the proposed Order to Show Cause.

Respectfully submitted,

**FORD & HARRISON LLP**

By: /s/ *Mark A. Saloman*
    Mark A. Saloman
    *Attorney for Plaintiffs*
    *Refresco Beverages US Inc. and*
    *Refresco Beverages LLC*

Dated: May 13, 2019
WSACTIVELLP:10531485.1